IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

INTERCARRIER COMMUNICATIONS, LLC,
    Plaintiff,

v.                                        Civil Action No. 3:12-CV-771-JAG

KIK INTERACTIVE, INC.,
    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on the defendant's motion to dismiss. (Dk. No. 13.) The plaintiff, Intercarrier Communications, LLC ("ICC"), has sued the defendant, Kik Interactive, Inc. ("Kik"), for patent infringement. Kik moves to dismiss the case for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2).

The parties have fully briefed the issue, and the Court dispenses with oral argument as it would not aid the decisional process. Kik lacks sufficient contacts with the Eastern District of Virginia to warrant this Court's exercise of personal jurisdiction over Kik. Accordingly, the Court GRANTS Kik's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), and DISMISSES the case WITHOUT PREJUDICE.

### I. BACKGROUND

ICC owns U.S. Patent No. 6,985,748 Patent ("the '748 Patent") entitled "Inter-carrier Messaging Service Providing Phone Number Only Experience." (Compl. ¶ 9.) ICC has filed complaints against thirteen different defendants for patent infringement in the Eastern District of

Virginia.[1] In this case, ICC alleges that Kik directly infringes the '748 Patent by providing a product that offers messaging services claimed in the '748 Patent.

Kik is a Canadian corporation with its principal place of business in Ontario, Canada. Kik's sole product, Kik Messenger, allows users to send and receive text, picture, audio, and video messages over an internet connection rather than through their phone carrier's network. Kik utilizes third-party "app"[2] stores as the primary method of distributing Kik Messenger. (Dk. No. 14-1, Heinke Decl. ¶¶ 6–7.) Neither the third-party app stores nor Kik charges users for Kik Messenger.

ICC's primary allegation regarding jurisdiction states:

> Upon information and belief, the Defendant conducts substantial business in [the Eastern District of Virginia], directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in Virginia.

(Compl. ¶ 7.) ICC also alleges that Kik introduced its infringing product and services into the stream of commerce "knowing that they would be sold in [the Eastern District of Virginia] and elsewhere in the United States." (Compl. ¶ 3.)

In support of its motion to dismiss for lack of personal jurisdiction, Kik has brought forward evidence of the following: (1) Kik's sole office is located in Ontario, Canada; (2) Kik

---

[1] As of the date of entry of this opinion, five of the thirteen original cases have been dismissed, two defendants have had default entered against them, and one has been transferred to the Southern District of Florida. The remaining five, including this case, are still pending in this Court.

[2] The word "app" is short for application, which in turn is short for a software program that allows a user to easily do something on a computer, frequently a smartphone or mobile device. Anita Campbell, *What the Heck is an "App"?*, Small Business Trends (Mar. 7, 2011), http://smallbiztrends.com/2011/03/what-is-an-app.html. A typical use of the word would be: "Look at this killer app that allows me to play Donkey Kong on my iPhone." In the instant case, however, the Kik Messenger app works in the background of the smartphone to enable it seamlessly to communicate with other smartphones.

offers Kik Messenger free-of-charge; (3) Kik has had no revenue from software sales as of March 2013; (4) Kik primarily uses third-party app stores to distribute its software product; (5) Kik and the various app stores formed their contracts under the laws of states other than Virginia; (6) Kik only retains each user's name and an optional "hashed" version of the user's phone number;[3] (7) Kik does not ask users for their mailing addresses; (8) Kik has not marketed Kik Messenger in Virginia; and (9) Kik has never transacted business with any company in Virginia. (*See* Dk. No. 14-1, Heinke Decl.) In addition, Kik has shown that (1) it does not implement a "freemium" software business model "where it sells a combination of 'free' and 'premium' products and/or services in which a proprietary product is offered for free but users are charged for advanced features, functionality, or virtual goods," (2) Kik promotes its app "generally and world-wide," but has never targeted Virginia, (3) Kik does not provide geo-location facilities with Kik Messenger, and (4), to the best of the Chief Executive Officer's knowledge, no companies or private individuals through whom Kik has raised funds reside in Virginia. (Dk. No. 19-1, Heinke 2d Decl.)

In response, ICC has produced various screenshots from the Internet describing Kik's popularity and success. (*See* Dk. No. 18-1, Yu Decl.) ICC has also provided the Court with links to online articles regarding Kik raising financing from various venture capital firms. (*Id.*)

## II. STANDARD OF REVIEW

Federal Circuit law governs whether a court has personal jurisdiction over a defendant in a patent infringement case. *Fred Hutchinson Cancer Research Ctr. v. Branhaven, LLC*, 861 F. Supp. 2d 730, 732 (E.D. Va. 2012) (citing *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 549 (E.D. Va. 2004) (applying Federal Circuit law)).

---

[3] "The purpose of 'hashing' a telephone number is to promote privacy so that the original number cannot be reconstituted from the hashed version." (Dk. No. 14-1, Heinke Decl. ¶ 10.)

3

> Ultimately, the plaintiff must prove that personal jurisdiction exists over the defendant by a preponderance of the evidence, *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010); however, "in the absence of an evidentiary hearing, a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction." *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003)

*Prototype Prods., Inc. v. Reset, Inc.*, 844 F. Supp. 2d 691, 700 (E.D. Va. 2012). The Court must "accept a plaintiff's well-pleaded factual allegations as true and draw all reasonable inferences in its favor." *Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1338 (Fed. Cir. 2006). The Court resolves any factual disputes in the plaintiff's favor. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002) (citing *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998)).

### III. DISCUSSION

*A. Personal Jurisdiction*

When evaluating personal jurisdiction over an out-of-state defendant, the Court must first determine "if the relevant state's long-arm statute permits the assertion of jurisdiction without violating federal due process." *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1376–77 (Fed. Cir. 1998). In Virginia, "[t]he purpose of [the] 'long arm statute' is to assert jurisdiction, to the extent permissible under the Due Process Clause of the Constitution of the United States, over nonresidents who engage in some purposeful activity in Virginia." *Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 534, 238 S.E.2d 800, 802 (1977). When a state's long-arm statute extends to the limits of due process, the Court must only determine whether exercising personal jurisdiction over the defendant in the state comports with federal due process. *3D Sys. Inc.*, 160 F.3d at 1377; *see also Reynolds & Reynolds*, 301 F. Supp. 2d at 550. Thus, in this case, the Court must undertake only the constitutional due process analysis.

The Supreme Court decisions in *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), and its progeny set the standard for the constitutional due process analysis. The analysis (1) considers whether the out-of-state defendant has certain "minimum contacts" with the forum state and (2) ensures that the maintenance of the case does not offend "traditional notions of fair play and substantial justice." *Id.* Under the "minimum contacts" analysis, "a defendant may be subject to either specific or general jurisdiction." *Reynolds & Reynolds*, 301 F. Supp. 2d at 549. A court has specific jurisdiction when the cause of action "arise[s] out of or relate[s] to" the defendant's contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). On the other hand, general jurisdiction over out-of-state defendants exists "when [the defendants'] affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).

### i. This Court Lacks General Personal Jurisdiction Over Kik

This Court lacks general personal jurisdiction over Kik. To establish general jurisdiction, the plaintiff must prove that the defendant has "continuous and systematic" contact with the forum. *Goodyear*, 131 S. Ct. at 2851. Based on this requirement of "continuous and systematic" contact, "the standard for imposing general jurisdiction is high." *Reynolds & Reynolds*, 301 F. Supp. 2d at 550. For example, in *Perkins v. Benguet Consol. Mining Co.*, 345 U.S. 437, 448 (1952), the Supreme Court found general jurisdiction over a non-resident corporation in Ohio because the president of the company relocated the corporation's entire operations to Ohio during World War II.

Although it is somewhat unclear, ICC apparently does not attempt to establish general personal jurisdiction over Kik. Kik briefly discusses in its memorandum that the Court cannot subject Kik to general jurisdiction because Kik does not have "continuous and systematic" contacts in Virginia. (Dk. No. 14, Def.'s Mem. Supp. 3.) ICC does not respond to this argument in its opposition memorandum, effectively conceding that it cannot establish general jurisdiction. *See, e.g., Cureton v. U.S. Marshal Serv.*, 322 F. Supp. 2d 23, 27 (D.D.C. 2004) ("When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded, even when the result is dismissal of the case."). In any event, ICC provides no evidence of "continuous and systematic" contacts and fails to satisfy the "high" standard for the Court exerting general personal jurisdiction over Kik.

*ii. This Court Lacks Specific Personal Jurisdiction Over Kik*

This Court lacks specific jurisdiction over Kik because Kik does not have sufficient minimum contacts related to the cause of action within the Eastern District of Virginia. "The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Communications, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) (internal citations omitted).

To satisfy the first prong, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235,

253 (1958). The Supreme Court in *Burger King* summarized the case law regarding an out-of-state defendant purposefully availing itself of a forum:

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or of the "unilateral activity of another party or a third person." Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State.

471 U.S. 462, 475 (1985) (internal citations omitted) (emphasis in original). Further, an out-of-state defendant has conducted business in a forum state "where the defendant 'deliberately' has engaged in significant activities within a State." *Id.* at 475–76 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)); *see also Fred Hutchinson Cancer Research Ctr. v. Branhaven, LLC*, 861 F. Supp. 2d 730, 732 (E.D. Va. 2012) (defendant cannot defeat jurisdiction in Virginia "where it admits that products were deliberately sold").

ICC alleges that "Kik purposefully availed itself of the privileges of conducting activities in Virginia because it provided and continues to provide product and services to customers in this State." (Dk. No. 18, Pl.'s Mem. Opp'n 7.) Additionally, ICC contends that Kik "needs to actively track the sender's and the recipient's IP addresses to properly route the message." (*Id.* at 9.) Indeed, Kik concedes that IP addresses "occasionally have some geographic relevance." (Dk. No 19, Def.'s Reply 2.) Based on these allegations, ICC concludes that "Kik consciously chose to direct its activities and conduct businesses in Virginia." (Dk. No. 18, Pl.'s Mem. Opp'n 9.)

Under ICC's theory, however, Kik has consciously chosen to conduct business in every single forum in which a user sends or receives a message with the Kik Messenger. Kik Messenger ranks as the "No. 1 downloaded social app in iTunes app stores in the U.S." and has over 50 million users. (Dk. No. 18, Pl.'s Mem. Opp'n 7.) According to ICC's logic, any court in

the United States could exercise personal jurisdiction over Kik. A company does not "consciously" or "deliberately" target a forum if a user unilaterally downloads and uses its software within that forum, nor does ICC cite any authority supporting its broad interpretation of specific jurisdiction.

ICC also alleges that Kik has purposefully availed itself of the Eastern District of Virginia because "Kik consistently promotes itself via the two largest social media platform [sic], Facebook and Twitter, which obviously reach directly into Virginia." (Dk. No. 18, Pl.'s Mem. Opp'n 7–8.) ICC attempts to use the same flawed logic that assumes a connection with Virginia simply because a product is popular and widely-used. ICC does not provide any evidence that Kik targeted Virginia specifically. *See Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1347 (Fed. Cir. 2012) (declining to extend personal jurisdiction over a corporate defendant who advertised in a publication that "was nationally distributed and not limited to [the forum state] . . . [and] appellants could not show that [defendant] targeted the [forum state] market at all"). Indeed, Kik explicitly states, and ICC does not refute, that "Kik has not customized the Kik Messenger or any marketing of the Kik Messenger for Virginia or Virginia residents." (Dk. No. 14-1, Heinke Decl. ¶ 14.) Accordingly, the Court finds that Kik's world-wide marketing does not meet the "purposeful availment" standard to support specific personal jurisdiction.

Finally, ICC argues that the Court should give little weight to the fact that the defendant offers Kik Messenger for free.[4] In support of this argument, ICC notes that Kik has raised money through venture capitalists and, thus, "is *ready* to capitalize on its messaging platform and is actively *attempting* to do so." (Dk. No. 18, Pl.'s Mem. Opp'n 8 (emphasis added).) Further,

---

[4] Kik argues that "patent infringement occurs when someone 'without authority makes, uses, offers to sell or sell any patented invention,'" *Aarotech Labs., Inc.*, 160 F.3d at 1378 (quoting 35 U.S.C. § 271(a)), and, because Kik offers Kik Messenger for free instead of selling it, Kik did not infringe on the '748 Patent. Although this fact may ultimately affect Kik's liability, it is utterly irrelevant to the jurisdictional inquiry.

8

ICC argues that "Kik's CEO . . . *hinted* that Kik *plans* to make a profit through its optional features." (*Id.* (emphasis added).) That Kik offers Kik Messenger for free is not dispositive of the specific personal jurisdiction issue. But even if it were, Kik's future plans and "hints" of coming products cannot establish jurisdiction *now*. Accordingly, the Court finds that Kik has not purposely availed itself to the Eastern District of Virginia. The Court, therefore, lacks specific personal jurisdiction over Kik because Kik does not have the required minimum contacts with the forum.[5]

### iii. Personal Jurisdiction Over Kik Would Be Unreasonable

Alternatively, the Court lacks jurisdiction because to hear this case would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. "[T]raditional notions of fair play and substantial justice" require that exercise of personal jurisdiction be reasonable. *Burger King*, 471 U.S. at 477.

The applicable test requires a court to weigh five factors: (1) the burden on the defendant, (2) the forum State's interest in the dispute, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987).

---

[5] In the complaint, ICC alleges that Kik introduced its product and services "into the stream of commerce knowing that they would be sold in [the Eastern District of Virginia] and elsewhere in the United States." (Compl. ¶ 3.) Kik addresses this specific jurisdictional theory in its memorandum in support of its motion to dismiss. In ICC's response, however, it labels the "stream of commerce" theory as "inapposite." (Dk. No. 18, Pl.'s Mem. Opp'n 9.) Even if ICC relied on the "stream of commerce" theory, the Court would lack specific jurisdiction because Kik did not intentionally target the Eastern District of Virginia, as previously discussed. *J. McIntyre Machinery Ltd. v. Nicastro*, 131 S.Ct. 2780, 2788 (2011); *see also Asahi Metal Industry Co. v. Superior Court of Cali., Solano County*, 480 U.S. 102, 111–12 (1987) (plurality opinion) (requiring "something more" than placing a product into the stream of commerce).

Adjudication of this claim in Virginia would significantly burden Kik. All of Kik's employees and officers are located in Canada. (Dk. No. 14-1, Heinke Decl. ¶ 2.) Additionally, because Kik receives no revenue from Kik Messenger, Kik has limited resources to defend itself in a distant, and foreign, forum. (*Id.* at ¶¶ 5, 16.) Meanwhile, ICC does not have a significant interest in litigating in Virginia. The reasons presented by ICC include the facts that the previous assignee of the '748 Patent does business in Maryland and the inventor resides in Maryland. (Dk. No. 18, Pl.'s Mem. Opp'n 12.) While these two facts represent ICC's potential interest in litigating in Maryland, they do not present a valid interest in litigating in Virginia. The additional fact that a case on the '748 Patent between a *different plaintiff* and a *different defendant* was litigated in the Eastern District of Virginia, *Telecommunication Systems, Inc. v. Mobile 365, Inc.*, No. 3:06CV485 (E.D. Va.), does not further *ICC's* interest in litigating in Virginia.

Another reasonableness factor concerns Virginia's interest in the dispute. This patent dispute is between Texas and Canadian companies. (Compl. ¶¶ 2–3.) Although some Virginia residents presumably use the popular Kik Messenger, no evidence exists to show that Virginia residents use this software proportionately more than residents of any other state. Accordingly, "[t]his Court cannot stand as a willing repository for cases which have no real nexus to [the Eastern District of Virginia]." *Cognitronics Imaging Sys., Inc. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 699 (E.D. Va. 2000) (internal citation omitted).

Perhaps judicial efficiency suggests that this Court should hold on to all the ICC cases and decide them in one fell swoop. A desire for efficiency, however, cannot supersede the basic requirement in any lawsuit, personal jurisdiction. Additionally, as previously stated, *see supra* 2 n.1, only five of the original thirteen lawsuits filed by ICC are still pending in the Eastern

District of Virginia, and one of the thirteen has transferred to the Southern District of Florida. Thus, the litigation of ICC's multiple claims is already occurring in different places, weakening the argument for judicial efficiency.[6] Considering all the factors, this Court's exercise of personal jurisdiction over Kik would be inconsistent with due process.

### B. Jurisdictional Discovery

In its opposition memorandum, ICC requests limited jurisdictional discovery "to the extent the Court believes additional evidence is necessary to evaluate Kik's Motion." (Dk. No. 18, Pl.'s Mem. Opp'n 15.) As an initial matter, Fourth Circuit precedent governs the determination of jurisdictional discovery because the request qualifies as a procedural matter not unique to patent law. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021 (Fed. Cir. 2009); *see Prototype Prods., Inc.*, 844 F. Supp. 2d at 704. ICC did not file a motion for jurisdictional discovery but, rather, informally requested such leave in their opposition brief. The Court denies ICC's request for jurisdictional discovery as improperly requested. *See Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) (no abuse of discretion in "declining to grant a motion that was never properly made" but raised only in opposition to a motion to dismiss and in an objection to the magistrate judge's report); *see also* Fed. R. Civ. P. 7(b)(1).

Even so, where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials by the defendant, a court may refuse jurisdictional discovery. *Unspam Techs., Inc. v. Chernuk*, 716 F.3d 322, 330 n.* (4th Cir. 2013)

---

[6] Should the multi-state litigation in this case prove cumbersome, the Judicial Panel on Multidistrict Litigation can ensure judicial efficiency by transferring multiple lawsuits involving common issues to one district for "coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a); *see, e.g., In re Acacia Media Techs. Corp. Patent Litig.*, 360 F. Supp. 2d 1377 (J.P.M.L. 2005) (coordinated and consolidated multiple patent infringement actions for pretrial proceedings).

(internal citations omitted); *see also Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 216 n.3 (4th Cir. 2002) (finding the district court did not abuse its discretion in denying jurisdictional discovery where "the plaintiff simply want[ed] to conduct a fishing expedition in the hopes of discovering some basis of jurisdiction"); *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc.*, 301 F. Supp. 2d 545, 554 (E.D. Va. 2004) ("The court does not abuse its discretion to deny jurisdictional discovery when the plaintiff raises only 'bare allegations' to dispute defendant's affidavits denying jurisdictional acts or contacts.").

In this case, ICC "offers only speculation or conclusory assertions" about Kik's contacts with the Eastern District of Virginia. Most of ICC's assertions regarding jurisdiction rest on the logic that over 50 million users use the Kik Messenger, so some of those users must use the product within the Eastern District of Virginia. This assertion is at best speculative, and discovery to support it would amount to no more than a "fishing expedition in hopes of discovering some basis of jurisdiction." *Base Metal Trading*, 283 F.3d at 216 n.3. Accordingly, the Court denies ICC's request for limited jurisdictional discovery.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS the defendant's motions to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

The Court will enter an appropriate order.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

Date: August 9, 2013
Richmond, VA

/s/ John A. Gibney, Jr.
United States District Judge